[No. 7789-9-I.   Division One.   April 13, 1981.]

RICHARD SUTHER, *Appellant,* v. SUZANNE P. J. SUTHER, *Respondent.*

*Short & Cressman* and *David R. Koopmans,* for appellant.

*Jonson & Jonson* and *Bernice Jonson,* for respondent.

RINGOLD, A.C.J.—Mr. Suther appeals from portions of a decree dissolving his marriage. The issues presented are essentially factual, or relate to the trial court's exercise of

its discretion. We find no error in the trial court's determinations and therefore affirm.

Richard and Suzanne Suther were married on April 15, 1955, when Richard was 19 and Suzanne 16 years old. They separated on July 28, 1977, and trial of the present action began on March 26, 1979. Four children, two emancipated by the time of trial, were born to the Suther union. The two younger children, ages 15 and 17 at the time of trial, live with Mrs. Suther.

Mr. Suther had various jobs through the years, none very remunerative, until in 1967 he started a mechanical contracting business with his brother–in–law, Alvin Pride. The initial capitalization in Pride & Suther, Inc., a close corporation, was $4,000 for which Pride and Suther each received 20 shares of stock. The firm has done especially well in the last 5 years largely because of its involvement in Alaska during the construction of the Alaska pipeline. At the time of trial Mr. Suther received from the corporation $4,000 per month gross salary, plus a substantial bonus at the end of each fiscal year. The amount of the bonus depends upon the profitability of the corporation over the year. For 1978 Mr. Suther's income, including bonus, was $120,000. Mr. Suther also participates in the corporate pension plan and profit sharing trust.

At the time of trial there was a stock retirement agreement in effect among the shareholders of Pride & Suther, Inc., i.e., Pride and Suther and their wives, that provided right of first refusal to the corporation, and a right to second refusal to the remaining shareholders in the event of any transfer of corporate shares. The price of the stock as offered to the corporation or stockholders was to be book value, no consideration being given to goodwill.[1] At trial

---

[1]The agreement provides:

"(a) No allowance shall be made for the goodwill or trade name of the Corporation;

"(b) Accounts payable shall be taken at face amount, less discounts deductible therefrom, and accounts receivable shall be taken at face amount, less discounts and less a reasonable reserve for bad debts.

evidence of the value of the corporation's stock ranged from its discounted book value, $123,234, to a value taking into account the firm's capitalized earnings, goodwill, and value as a going concern, $517,000. The trial court found the total value of the shares to be $400,000, or $200,000 for the stock owned by the Suthers.

Because of marriage Mrs. Suther did not finish high school and did not develop any particular job skills, although she had worked as a retail salesclerk at various times. Since 1976 Mrs. Suther had attended Bellevue Community College on a part–time basis seeking a degree. Her plans at trial were to pursue a degree in marketing at the University of Washington. From the time of the separation up to trial Mrs. Suther had been seeing a psychiatric social worker who testified at trial that Mrs. Suther was gradually beginning to be reconciled to the dissolution and should be able to function normally within about 6 months. The trial court awarded Mrs. Suther maintenance of $2,000 per month for 5 years.

After the separation Mr. Suther expended approximately $11,000 on repairs to the family home.

The trial judge's overall property valuation and distribution is reflected in the table below:

| | Net Fair Market Value | Awarded to or to be paid by husband | Awarded to or to be paid by wife |
|---|---|---|---|
| Family residence | $132,770 | | $132,770 |
| Household furniture and furnishings | 6,623 | | 6,623 |
| Stock & bond U.S. Dev. Co. | 14,500 | $7,250 | 7,250 |
| Cash | 3,319 | | 3,319 |

"(c) All real and tangible personal property shall be taken into account at the market value thereof rather than the depreciated book value as shown on the books of the Corporation."

| Commercial building 50% | 72,063 | 72,063 | |
|---|---|---|---|
| Boat & trailer | 8,000 | 8,000 | |
| Profit sharing trust | 40,805 | 40,805 | |
| Pension plan | 6,438 | 6,438 | |
| 20 shares stock Pride & Suther | 200,000 | 200,000 | |
| Commercial checking acct. | 628 | 628 | |
| | $485,146 | $335,184 | $149,962 |

B. Equalizing promissory note: ($92,611) $92,611

## EVALUATION OF CORPORATE STOCK

Mr. Suther's primary objection to the trial court's property division relates to the valuation of the community's shares of Pride & Suther, Inc., at $200,000. He contends that the corporation obtained its only business by competitive bidding and therefore has no goodwill. Furthermore, he asserts that the agreement binds the court to value the corporate stock at its book value, excluding goodwill.[2]

## The Evaluation Evidence

Three experts testified as to the value of the stock. Mr. Prior, testifying on behalf of Mr. Suther, cataloged seven different valuation methods and concluded that the proper formula should be based upon book value. He deduced that the Suthers' interest was $94,796, and then that this figure should be discounted because the 50 percent interest was less than a majority, and because the stock market was depressed. Though aware of the stock retirement agreement, which was admitted into evidence, Prior did not take it into account establishing the stock valuation.

Two experts testified on Mrs. Suther's behalf that the value of the community's shares was $285,000. These experts used a multiple of earnings evaluation approach,

---

[2]No contention is made that the trial court failed to consider the agreement in arriving at the court's valuation of the stock.

and imputed a value of $380,000 to the company's goodwill.

## Goodwill

■ Valuation of the shares of a closely held corporation presents a difficult problem, calling for the careful weighing of relevant facts, and ultimate exercise of reasoned judgment.

> * * * Valuation of stock of a closely held company is an attempt to determine the fair market value of an asset which by definition does not have a fair market value, since a market wherein a willing buyer will meet a willing seller, neither under any compulsion, generally does not exist. The stock of a closely held corporation is as a rule offered for sale only under unusual circumstances. The number of prospects is usually extremely limited. [Tierney, "A New Approach to the Valuation of Common Stock of Closely Held Companies," *Journal of Taxation* 14 (July 1962).]
>
> As a result, the valuation of the stock of a closely held corporation requires an entirely different approach than the valuation of any other asset. The valuation process has been described as a "matter of judgment and opinion rather than mathematics." Banks, "Present Value and the Close Corporation", 49 TAXES—*The Tax Magazine*, 33, 35 (January 1971). Each case presents a unique factual question, the solution to which is not within the ambit of any exact science. The reasonableness of any valuation depends upon the judgment and experience of the appraiser and the completeness of the information upon which his conclusions are based. Lawinger, "Appraising Closely–Held Stock—Valuation Methods and Concepts," 110 *Trusts and Estates* 816 (October 1971).

*Lavene v. Lavene,* 162 N.J. Super. 187, 193, 392 A.2d 621, 623–24 (1978).

■ One of the most troublesome questions regarding such valuation is whether a pecuniary sum should be attributed to goodwill, which our court, quoting J. Story, *Partnership* § 99 (3d ed. 1850), has characterized as

> a benefit or advantage "which is acquired by an establishment beyond the mere value of the capital, stock, funds or property employed therein, in consequence of

the general public patronage and encouragement, which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

*In re Marriage of Lukens*, 16 Wn. App. 481, 483–84, 558 P.2d 279 (1976). The court there observes that "[g]oodwill is most often associated with commercial ventures", and goes on to hold that it may also be a part of the value of a medical practice. *Lukens*, at 484. *See also in re Marriage of Fleege*, 91 Wn.2d 324, 588 P.2d 1136 (1979). There is competent testimony here that Pride & Suther, Inc., has goodwill of substantial value. Mr. Suther's argument that the company has no goodwill because it obtains its business only by competitive bidding is not meritorious. First, Mr. Suther's own expert witness' report indicates that only about 60 percent of the company's business is obtained by such bidding, the balance by negotiated contracts. Second, goodwill could be attributable even to a company whose only business was obtained by competitive bidding, since goodwill affects more than a company's ability to attract business, *e.g.*, its bondability and capacity to obtain financing. This court cannot say as a matter of law that Pride & Suther, Inc., has no goodwill. Valuation of the goodwill is a question of fact. *In re Marriage of Kaplan*, 23 Wn. App. 503, 597 P.2d 439 (1979). The trial court's valuation is based on competent evidence.

## Stock Retirement Agreement

Even though the trial court found that Mrs. Suther had signed the agreement she

had never participated in the actual operation of the business, had no financial experience, no real concept of corporate structure or meaning of the Buy and Sell Agreements, did not understand the legal purport thereof, was unable to understand the financial statements, had not seen the financial statements, had not seen the corporation tax returns. Respondent had no independent advice, insufficient knowledge of her

rights at the time of signing the Buy and Sell Agreement. . . .

Finding of fact No. 17. Mrs. Suther was unsophisticated, uninformed, and not represented by counsel when the agreement was effectuated. *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977); *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972). She is not bound by the agreement as to the value of the stock in this proceeding.

Other courts that have considered similar agreements in dissolution cases have concluded that the agreement did not bind them to the agreed–upon price. In *In re Marriage of Moffatt,* 279 N.W.2d 15 (Iowa 1979), a bylaw of the corporation gave it a right of first refusal before any gift, sale or bequest of stock to another person. In such event the corporation had the option to buy the stock at a price to be derived by an agreed formulation. The husband argued that that formulation bound the court as to the stock's value. The court observed that the problem with the argument was that, among other things, the corporation might not exercise its option. The court concluded that the husband was therefore not limited to the option price, and neither should the court be, but the option price should be only a factor in the stock valuation. *Moffatt,* at 18. The court went on to observe that valuation of a close corporation depends upon a host of factual considerations.

As in *Moffatt* the stock retirement agreement here provides only an option, and might not be exercised. Thus, it is only a factor to be considered and is not binding upon the court. While none of the experts took the stock retirement agreement into account in establishing their opinions regarding value, the agreement came into evidence through Mr. Suther's direct testimony. The trial court's valuation was above book value, thus reflecting some goodwill, but below the value indicated by Mrs. Suther's experts.

*In re Marriage of Rosan,* 24 Cal. App. 3d 885, 101 Cal. Rptr. 295 (1972), relied upon by Mr. Suther for the proposition that the agreement should bind the court, stands for

the same proposition as *Moffatt*—that the agreement is only a factor to be considered in arriving at a value. In *Rosan* a buy and sell agreement provided that upon voluntary termination of the husband from his job, or upon termination for good cause, first the corporation and then its majority shareholder would be entitled to purchase the husband's shares for 70 percent of "computed value" according to the agreement. The trial court in fact valued the stock using the formula, and the appellate court stated:

> Under the circumstances disclosed by the evidence, and particularly in view of the restrictive conditions on the disposition of the stock and its resulting illiquidity, *factors substantially affecting its value,* the trial court was justified in assessing the value of the stock [according to the agreement's formula].

(Italics ours.) *In re Marriage of Rosan, supra* at 891. Clearly the court felt that the agreement was a factor to be considered in determining value, but did not bind the court as a matter of law to its price term.

In *Rogers v. Rogers,* 296 N.W.2d 849 (Minn. 1980), a buy and sell agreement required the shareholder to offer his stock to the corporation for a price computed according to a formula in the buy and sell agreement. The husband claimed the proper evaluation of his shares should be based upon the buy and sell agreement formula. The wife's experts, using methods not unlike those used by Mrs. Suther's experts here, opined that the value was about triple that urged by the husband. The court settled upon a compromise figure. On appeal the husband argued that the buy and sell agreement was dispositive of the valuation of the stock. The court observed that were the corporation to be sold for cash, without the artificial limitation of the buy and sell agreement, the shareholders' return would reflect the company's actual market value, but that since the agreement restricts the shares' saleability, it should be taken into account in arriving at value.

We conclude that the courts which have recently

considered the question of the applicability of a buy and sell agreement to the determination of the value of the stock of a close corporation in a dissolution proceeding have held that such an agreement is a factor to be considered, but is not determinative of the stock's value. The stock retirement agreement was in evidence at trial, and the trial court's valuation of the stock was below the capitalized earnings computation proffered by Mrs. Suther's experts. The trial court did not err.

## MAINTENANCE TO MRS. SUTHER

Mr. Suther contends that the purpose of maintenance is to provide a transitional period only and that Mrs. Suther can rehabilitate herself in 3 years rather than in 5 years by going to summer school. The award of maintenance is within the trial court's discretion and the trial court adhered to the factors set out in RCW 26.09.090 and did not abuse its discretion.

## PROFIT SHARING TRUST

Mr. Suther argues that when the husband and wife are living separately and apart their individual earnings are the separate property of each, RCW 26.16.140, and that, therefore, the contribution to the profit sharing trust after the parties' separation in July 1977 should be awarded to him as his separate property.

In a dissolution proceeding all the parties' property, whether separate or community, is before the court for division. *In re Marriage of Donovan,* 25 Wn. App. 691, 612 P.2d 387 (1980). The trial court in its oral opinion stated:

> I am going to do what I think is my highest sense of justice and my highest sense of equity. . . . I am about to try to divide this estate equally, and the basic premise is an equal division to both sides.

There is no reason that the trial court could not give to the wife a share of the husband's separate interest in the profit sharing plan in making an equitable division. The trial court did not abuse its discretion.

### Repairs to the Residence

After the parties separated in July 1977, the family home remained unfinished and required redecorating. Mr. Suther paid for the completion of the house and its interior decorations with community and separate funds. He contends that he is entitled to an equitable lien against the property for his expenditure of separate funds for repairs. Though the trial court expressed no reason for denying the equitable lien, we cannot reverse since the court's refusal must be viewed as one feature of the court's overall equitable division of the property. RCW 26.09.080.

### Attorney's Fees to Mrs. Suther's Attorney

The trial court required Mr. Suther to pay $22,000 on account of Mrs. Suther's attorney's fees. We find the trial court's award of attorney's fees reasonable and not to constitute an abuse of discretion.

The judgment of the trial court is affirmed.

Swanson and Durham, JJ., concur.

Reconsideration denied May 14, 1981.

Review denied by Supreme Court July 17, 1981.