**Gaylie Ann B. SAVAGE, Plaintiff and Respondent,**

v.

**Neal SAVAGE, Defendant and Appellant.**

**No. 17855.**

Supreme Court of Utah.

Feb. 9, 1983.

Allen K. Young, Jackson Howard, Provo, for defendant and appellant.

Harold G. Christensen, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The defendant-appellant seeks reversal of the decree of divorce entered by the lower court in this action, claiming that the trial court erred in its division of the parties' marital property and its award of alimony, child support and attorney's fees. We affirm.

The plaintiff and the defendant were married on February 16, 1960. At the time of the marriage, the plaintiff owned an automobile and stocks and bonds worth several thousand dollars. The defendant owned a one-third interest in Savage Coal & Lumber Co., a small business founded and operated by family members. His full-time employment with that company commenced in 1957, three years before the marriage. From that time to the present, the defendant has continued employment with that company and its successors. Twelve corporations have evolved from Savage Coal & Lumber. Their combined earnings

in 1979 were in excess of $1.8 million. The defendant's income in 1979 was $133,370; the plaintiff received approximately $7,000 in income from her personal stock holdings, which were largely gifts from her family. Both parties had university training, although the defendant did not complete a degree. The plaintiff taught school for two years following her marriage, and thereafter until the time of the divorce was a full-time homemaker and caretaker for the parties' three children. During the marriage, the parties enjoyed a high standard of living which included household and gardening services, travel and entertainment, and a generous level of support for all of the family's activities.

The trial court divided the personal property of the parties pursuant to their stipulation. The plaintiff received the marital residence with all of the furnishings, a building lot, a car, her own savings and securities, and her personal belongings, all of which were valued at $243,827.60. The defendant was awarded stock, securities, his profit sharing account and his personal belongings, all of which were valued at $221,085.27. The court divided the stock in the Savage Companies, with 60% awarded to the defendant and 40% to the plaintiff. The defendant was also ordered to pay $2,000 per month in alimony, $500 per month per child in child support (for a total of $1,500), and $17,500 toward the plaintiff's attorney's fees.

The defendant raises three issues on appeal, claiming: first, that the trial court abused its discretion in awarding a portion of the Savage Companies stock to the plaintiff; second, that the amount of alimony awarded to the plaintiff was excessive; and third, that no attorney's fees should have been awarded.

In a divorce proceeding, it is well established that the trial court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity. *See, e.g., Cox v. Cox,* Utah, 532 P.2d 994 (1975); *Mitchell v. Mitchell,* Utah, 527 P.2d 1359 (1974). In *Turner v. Turner,* Utah, 649 P.2d 6 (1982), we stated that:

> Although this Court may weigh the evidence and substitute its judgment for that of the trial court in divorce actions, this Court will not do so lightly and merely because its judgment may differ from that of the trial judge. A trial court's apportionment of property will not be disturbed unless it works such *a manifest injustice or inequity as to indicate a clear abuse of discretion.*

*Id.* at 8 (citations omitted) (emphasis added). *See also McCrary v. McCrary,* Utah, 599 P.2d 1248 (1979).

The defendant's objections to the trial court's division of the Savage Companies stock focus on the court's failure to determine a value for the stock, the absence of any ruling on the tax consequences of the division, and the perpetuation of a tie between the parties by virtue of the continued co-ownership of stock in a closely held corporation. However, a review of the voluminous trial transcript and post-trial memoranda of the parties makes it clear that the trial court had virtually no feasible alternative to an in-kind division of the stock. Three witnesses testified at great length about the value of the Savage Companies stock. Each was well qualified as an expert and each agreed on most of the fundamental principles applicable to the valuation of closely held corporate stock, including the fact that there are no universal, well-established formulae for determining appropriate price-earnings ratios for such a corporation. The two defense witnesses testified, respectively, that the parties' one-third interest in the Savage corporations was worth $899,340 and $1,079,207. The plaintiff's expert testified to a value of $4,072,000, nearly 3 million dollars higher than the highest estimate of the defendant's witnesses. Each of the witnesses was subject to meticulous cross-examination by opposing counsel, and the strengths and weaknesses in each of their opinions were scrupulously exposed. Each of the parties claims on appeal that the expert testimony of the other was entirely discredited at tri-

al. We disagree. The experts for both sides presented plausible, credible testimony respecting value, and all three of the experts acknowledged a very high subjective "professional judgment" factor in their appraisals. In such a circumstance, the trial court legitimately found that neither party had proved value by a preponderance of the evidence and that, therefore, the court could not accurately determine value. The court's finding of fact on that issue reads:

> Because of the great disparity between the value of the stock owned by the parties as represented by the expert witnesses called by each of the parties, the Court finds that it cannot accept either party's expert testimony as accurately reflecting said value and accordingly rejects the same.

This finding is entirely supported by the record and we will not overturn it.

In view of the failure of the evidence to establish value, and the defendant's inability to pay the plaintiff her share even under the low valuation, the trial court had virtually no alternative to an in-kind distribution of the Savage stock. The defendant insists that only a lump sum pay-out to the plaintiff in lieu of her interest would be fair to him. However, all of his proposals and evidence in that regard depend on the low valuation which was properly rejected by the court. It is quite clear that the defendant has no ability to make a lump sum pay-out over time in an amount in excess of the low figures his experts testified to. Even under his proposal, the defendant would have to dramatically reduce his monthly support payments in order to have enough cash from his income to pay the plaintiff her share. That proposal would virtually require the plaintiff to subsidize the defendant's payments to her of her own interest in the business properties. We note in passing that the defendant's proposal also depends on a one-third, two-thirds split between him and the plaintiff. In view of the 20-year length of this marriage, and the fact that both parties devoted full-time efforts throughout that period to the ends of the marriage, we see no abuse of discretion in the 40%/60% split fashioned by the trial court. Virtually the entire present value of the corporations was developed during the marriage and, while it is true that the plaintiff took no responsibility for the business, it was her assumption of the domestic burdens which made possible the defendant's full-time participation in the business. She is therefore entitled to a fair and equitable share of the financial benefits accumulated by virtue of their joint efforts in the marriage.

The defendant argues strenuously that the tax consequences of the court's in-kind distribution mean financial disaster for him. Depending on the level at which the stock is valued for tax purposes, the defendant's evidence was that, as a result of the stock transfer, he would incur over $500,000 in federal taxes (at the $4 million level) or over $100,000 (at the $1 million level). It is evident from a review of the post-trial briefs, memoranda of the parties, and the testimony and exhibits at trial that the issue of the tax impact of an in-kind distribution was fully and thoroughly presented to and considered by the trial court. The reason for the trial court's failure to include a ruling on liability for any tax is evidenced by the court's minute entry denying the defendant's Motion for New Trial, which states: "the issue of who will bear the tax liability is reserved until the same is determined." The trial court has continuing jurisdiction over this issue. At this time, there is no way of knowing what the size of that tax liability will be. As the plaintiff points out in her brief on appeal, if the defendant prevails on his view of value with the U.S. Internal Revenue Service, the tax liability could be as low as $62,000. Furthermore, as we have already pointed out, the trial court had virtually no alternative to an in-kind distribution short of a wholesale adoption of the defendant's approach to value and payment. The trial court found that that value was not proved by a preponderance of the evidence and therefore acted properly in refusing to structure a pay-out schedule based on it.

■ The defendant's final argument on this issue is that the continued interaction

between these parties necessitated by co-ownership of this stock is against good policy generally. We agree that, whenever possible, continued joint ownership by divorced spouses of closely held corporate stock should be avoided, and acknowledge with approval those cases cited by the defendant which set forth the rationale for that principle. *See, e.g., Frandsen v. Frandsen,* 58 Hawaii 98, 564 P.2d 1274 (1979); *Berry v. Berry,* Utah, 635 P.2d 68 (1981); *Read v. Read,* Utah, 594 P.2d 871 (1979); *Wetzel v. Wetzel,* 35 Wis.2d 103, 150 N.W.2d 482 (1967). However, this case presents a circumstance where it appears impossible to deal fairly with the parties in any other way. Because the valuations by both the plaintiff's and the defendant's experts were supported by credible evidence, any cash distribution risked doing substantial injustice to one party. In fact, at the higher valuation level, the defendant acknowledges that he would be incapable of paying such a cash award. Therefore, in order to protect the parties, and eliminate altogether the considerable problems in determining value, the in-kind division of Savage stock was a proper solution. There is ample case law in which such an approach is supported. *See, e.g., Finck v. Finck,* 9 Ariz. App. 382, 452 P.2d 709 (1969); *Johnson v. Steel, Inc.,* 94 Nev. 483, 581 P.2d 860 (1978); *Braswell v. Braswell,* Texas Civ.App., 476 S.W.2d 444 (1972); *Hutchins v. Hutchins,* 135 Vt. 350, 376 A.2d 744 (1977).

▇ With respect to alimony and child support, the defendant claims that the trial court abused its discretion in awarding the plaintiff $2,000 per month in alimony and $1,500 per month in child support, $500 per month per child. He basically argues that the evidence was insufficient to support the award. His argument is undercut considerably by the fact that his own evidence at trial showed his monthly expenses to be $3,140. In comparison with that figure, the $3,500 per month which will be available to plaintiff to support herself and three children does not suggest "manifest injustice." We have already noted that the parties and their children enjoyed a very high standard of living during the marriage. One of the chief functions of an alimony award is to permit the parties to maintain as much as possible the same standards after the dissolution of the marriage as those enjoyed during the marriage. *See, e.g., English v. English,* Utah, 565 P.2d 409 (1977). The plaintiff's evidence showed her monthly expenses to be $4,100, and her accountant testified that she needed a gross monthly total of $5,600 to net that much because the alimony would be taxable to her. The trial court has awarded only a little over half of that figure. In 1979, the defendant had a gross income in excess of $133,000, and a net monthly income of $7,362. With the tax advantages to the defendant resulting from a deduction of the alimony payments, his net monthly income at that level will easily cover both the trial court's award to the plaintiff and his own expenses. The child support award is reasonable, given the ages of the children (16, 11, and 7 in 1980), their past standard of living and the defendant's income. Where a marriage is of long duration and the earning capacity of one spouse greatly exceeds that of the other, as here, it is appropriate to order alimony and child support at a level which will insure that the supported spouse and children may maintain a standard of living not unduly disproportionate to that which they would have enjoyed had the marriage continued. *See, e.g., In re Marriage of Steinbrenner,* 60 Or.App. 106, 652 P.2d 845 (1982). We hold that the trial court did not abuse its discretion in its alimony and child support awards.

▇ Finally, on the question of attorney's fees, we hold that there was ample evidence to support the trial court's award and that there has been no showing of manifest injustice therein. The fee awarded was considerably less than that established by testimony at trial, and the evidence on the parties' relative ability to pay the amounts in question support the award. Absent an abuse of discretion, we will not second-guess the trial court on this issue where there is sufficient evidence on the reasonableness of the fee, the need of the plaintiff and the relative superiority of the

**1206**

defendant's ability to pay. *See, e.g., Paul Mueller Co. v. Cache Valley Dairy Assoc.,* Utah, 657 P.2d 1358 (1982). In addition to the Savage stock and his $133,000 annual income, the defendant received marketable stock worth $22,000, and a note worth $144,000. The only way the plaintiff would be able to pay the large fees incurred in this litigation would be to sell her house or furnishings or to liquidate securities given to her by her parents. Her only income is the $3,500 per month from the defendant, and approximately $7,000 per year in dividends.

We affirm all of the actions of the trial court and award costs to the plaintiff-respondent.

HALL, C.J., and OAKS, J., concur.

STEWART, Justice (dissenting):

I do not agree that there was "no alternative to an in-kind distribution" of the stock of defendant's companies. It is not at all unusual in cases where valuation is an issue to be determined that the estimates of experts are widely disparate. I think a better approach than the distribution in kind ordered by the trial court would be to remand this case for a determination by the trial judge of the actual value of the corporations. That task is no different, or more difficult, than the same kind of task which must be performed in most tort cases, contract cases, and property cases where an award of damages is made.

Furthermore, as the majority notes, there are compelling reasons to avoid a property distribution based on joint ownership by divorced spouses of a closely held family corporation, especially when other members of the spouses' families are also stockholders. It certainly is not to the advantage of either of the parties in this case to be placed in a very close economic relationship which has every potential for further contention, friction, and litigation, especially when third parties having nothing to do with the divorce will also necessarily be involved. The economic interests of the parties will invariably be at odds with each other.

*Wetzel v. Wetzel,* 35 Wis.2d 103, 150 N.W.2d 482, 485 (1967), stated the sound principle that such friction ought to be avoided:

> The elimination of the source of strife and friction is to be sought and the financial affairs of the divorced parties separated as far as possible. If the parties cannot get along as husband and wife, it is not likely they would get along as partners in business.

*See also Frandsen v. Frandsen,* 58 Haw. 98, 564 P.2d 1274 (1977).

Furthermore, the solution arrived at by the trial court and affirmed by this Court will necessarily result in the unnecessary diminution of the marital estate because of the inevitability of one party or the other having to pay substantial taxes on the transfer of the stock.

HOWE, J., concurs.