**Gayle South ARGYLE, Plaintiff and Respondent,**

v.

**Arthur Mitchell ARGYLE, Defendant and Appellant.**

**No. 19110.**

Supreme Court of Utah.

Aug. 14, 1984.

Bryce E. Roe, Salt Lake City, for defendant-appellant.

John A. Thomas, Evanston, Wyo., for plaintiff and respondent.

DURHAM, Justice:

By this appeal the defendant seeks reversal of a decree of divorce, claiming that the trial court erred in its valuation of the parties' marital property and in its award of a cash settlement in lieu of certain property rights. We affirm.

The plaintiff and defendant were married on September 29, 1955. They had five children, all but one adults at the time of this action. The defendant was employed by the Argyle family ranch throughout the marriage. In 1963, his mother, Emma Ireta Argyle, then a widow, made a gift to defendant and his brother, Ralph Argyle, of certain real property to be contributed by them to a new corporation, Argyle Ranch, Inc., in exchange for stock. Through this and other transactions not relevant to the issues of the case, defendant and his brother and mother each acquired 43,000 shares of stock.

In connection with the incorporation of Argyle Ranch, Inc., an "Agreement to Incorporate and Declaration of Gift" was executed that contained a "first option" or "first refusal" provision under which the remaining shareholder(s) received an option

to purchase the stock of a selling shareholder at its $1-per-share par value. The agreement also provided for the purchase by the remaining shareholder(s) of Emma Ireta's shares at par value on her death. Emma Ireta is deceased. At present the defendant and his brother are the sole shareholders. Each holds 43,000 shares, and each is in the process of purchasing 21,500 shares from Emma Ireta's estate.

During the marriage plaintiff and defendant were furnished by the corporation with a home, food, utilities, cars, and other essentials, including furniture and appliances. Defendant drew a nominal salary. Plaintiff was a homemaker throughout the 27-year marriage and cared for the parties' five children. She also participated directly in the ranch operation by cooking for ranch employees and by cooking for four years in a ranch-owned cafe.

The trial court awarded plaintiff a cash settlement of $463,000, representing one-half of the value of the defendant's stock in Argyle Ranch, Inc., and ordered the defendant to pay $100,000 within six months and the balance over a 15-year period with interest on the unpaid balance at the rate of ten percent per annum.

On appeal the defendant raises two issues, claiming first, that the trial court had no evidence on which to support its valuation of the plaintiff's share of the stock in Argyle Ranch, Inc., and second, that the trial court abused its discretion in ordering defendant to pay the money judgment of $463,000 on the terms described above.

■ The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity. *Savage v. Savage*, Utah, 658 P.2d 1201, 1203 (1983). In particular the "[d]etermination of the value of the assets is a matter for the trial court which will not be reviewed in the absence of a clear abuse of discretion." *Turner v. Turner*, Utah, 649 P.2d 6, 8 (1982) (citations omitted). A review of the record reveals no such abuse of discretion with regard to the valuation of the marital stock

or the method required for payment of the award.

At trial plaintiff's expert, a real estate appraiser, testified that the market value of the ranch was $3,489,249. Defendant's two experts, also real estate appraisers, valued the ranch at $1,235,500. Recent financial statements prepared by the corporation for the Production Credit Administration showed a net worth for the corporation of $1,962,008. The court relied on this net worth figure as representing the value of the ranch. From that amount the court deducted $109,000, representing the gift of land received from defendant's mother in 1963. The balance was then halved to determine defendant's interest and halved again to reach plaintiff's marital share of the property.

Defendant attacks the valuation on two grounds: (1) there was no testimony as to the value of the *stock*, only the value of the ranch assets and net worth; and (2) the "first option" agreement, giving remaining shareholders the option to purchase stock at $1 per share should have been taken into consideration by the court in valuing the stock.

■ The only testimony defendant offered to the court regarding the value of the marital property to be divided was information about the ranch assets and liabilities, the very information he now contends is inadequate. Defendant's first expert was a real estate broker and a land use consultant, specializing in appraisal of ranch properties. Defendant's second expert was a professional fee appraiser also specializing in appraisal of ranch properties. Both experts testified regarding the market value of the ranch, considering the real property and improvements, animals, machinery, and grazing licenses of Argyle Ranch, Inc. Neither testified to the value of the Argyle Ranch stock as it might differ from the value of the corporate assets or net worth. If defendant's position was that the stock should have been valued by a measure different than the value of the underlying assets or net worth, he had

the burden of offering further evidence on alternative methods of valuation. Having failed to produce such evidence, he may not claim that the trial court erred in considering the information he did supply. *See Turtle Management, Inc. v. Haggis Management, Inc.*, Utah, 645 P.2d 667, 672 (1982).

Defendant's claim that the "first option" agreement should have been a factor in valuing the stock is also without merit. Defendant offered no testimony below as to how the agreement should have been considered, nor can defendant cite any cases where a "first option" agreement at a specified amount is determinative for purposes of valuing stock for purposes of a marital dissolution. In a divorce action a "first option" agreement or other retirement or redemption provision is not determinative of the value of the marital stock. Agreements of this sort generally do not contemplate an evaluation for such purposes. *Cf. In re Marriage of Morris*, Mo., 588 S.W.2d 39, 43 (1979); *Suther v. Suther*, 28 Wash.App. 838, 844–45, 627 P.2d 110, 113 (1981).

We also disagree with defendant that the lower court took the "easy way out" in basing the value of the stock upon the net worth of Argyle Ranch, Inc. We acknowledge that valuation of the stock of a closely held corporation presents a unique factual question. *Lavene v. Lavene*, 162 N.J.Super. 187, 193, 392 A.2d 621, 624 (1978) (citation omitted). However, there is ample support in the record for the court's determination as to a reasonable and fair valuation of the marital stock.

Defendant's second claim, that the cash award with interest is an abuse of the trial court's discretion, is based on defendant's concern that such an award is beyond his ability to pay. Once again defendant complains about an outcome to which he offered virtually no alternative in his evidence and arguments before the trial court. It is the court's duty to make a division of the property and income in a divorce procedure so that the parties may readjust their lives to the new situation as well as possible. *MacDonald v. MacDonald*, 120 Utah 573, 236 P.2d 1066 (1951). The decision below accomplishes such a result. We are unable to fashion a better method on these facts, and the defendant's failure to describe one suggests that a more fair solution does not exist.

The court's choice of a cash award is appropriate. Wherever possible, this Court avoids division of marital stock between the parties because it forces them to be in a "close economic relationship which has every potential for further contention, friction, and litigation, especially when third parties having nothing to do with the divorce will also necessarily be involved." *Savage v. Savage*, Utah, 658 P.2d 1201, 1206 (1983) (Stewart, J., dissenting). Further, the schedule for payment, both as to amounts and timing, as well as interest on the unpaid balance, is consistent with the present situations of the parties. Defendant's financial and economic needs are essentially unchanged from the period of marriage. He is acting president of the corporation and foreman of the ranch. The residence, the vehicles, and all of the essentials of his daily living are provided by Argyle Ranch, Inc.

After 27 years of married life on the ranch, where virtually every need was provided for, plaintiff has had to establish a new and separate household. Her initial needs are considerable. She has been forced to borrow money to buy furniture and other basic items. Although her family has provided her and her son with a temporary residence, she rightfully anticipates that she should be able to acquire and maintain a home independent of her family. She is 45 years old. She suffered a nervous breakdown shortly after the parties' separation. She has rheumatoid arthritis, an unpredictable and crippling disease for which she has been hospitalized. She has been trained and is working as a bookkeeper in her brothers' business. She nets approximately $500 per month. The court did not award alimony to plaintiff.

Based on the situations of the parties, it cannot be said that the method of payment to plaintiff is unreasonable.

 Defendant's final argument is that the inclusion in the decree of interest on the unpaid portions of plaintiff's cash award was an abuse of discretion. We disagree. The defendant did not present to the court below nore has he offered on appeal any persuasive reason why he should have the current use of plaintiff's award without interest. We have previously approved of interest upon deferred payments in an equitable division of property. *See Pope v. Pope*, Utah, 589 P.2d 752 (1978).

In conclusion we hold there was no abuse of discretion in the lower court's valuation of the marital property, in its award of a cash settlement to plaintiff, or in the method of payment.

Affirmed. Costs to respondent.

HALL, C.J., and DEAN E. CONDER, District Judge, concur.

HOWE, Justice (concurring and dissenting):

I concur in the award to the plaintiff of $463,000 representing one-half of the value of her husband's stock in Argyle Ranch, Inc. I respectfully dissent, however, from the trial court's order with regard to the payment of that amount to the plaintiff. The defendant was ordered to pay $100,000 within six months and the balance over a fifteen-year period with interest on the unpaid balance at the rate of 10 percent per annum. I find nothing in the record to indicate that the court took any evidence as to the defendant's ability to borrow the $100,000. It is undisputed that he did not have $100,000 in liquid assets. The genesis for the court's order apparently was the plaintiff's proposal that he pay $150,000 down. This proposal appears to have been made without any supporting evidence by the plaintiff. The corporation is a family ranching operation in one of the rural counties of this state. Most of the assets of the corporation are mortgaged. The defendant

could only pledge his stock, which is not a majority interest. I believe that before an order of such magnitude is made, some evidence should appear that the defendant has the borrowing capacity to meet the court's order. This burden of proof rests with the plaintiff and should not be shifted to the defendant as the majority opinion advocates.

Recently, in *Berry v. Berry*, Utah, 635 P.2d 68 (1981), we reversed a trial court's order which, in a similar situation, ordered the husband to purchase the wife's interest that had been awarded her in a farming partnership composed of the husband and two of his uncles. He was ordered to pay her $42,000 over a ten-year period with 12 percent interest on the unpaid balance. We affirmed the award of a portion of the husband's interest in the partnership to her, but held that it would be inequitable to require him to purchase that interest from her when he lacked the financial capacity to do so. The same problem is presented in the instant case where it is of greater concern because of the sizable amount involved. I would remand the case to the trial court to provide a proper evidentiary basis for its order of payment.

I also dissent from the award to the plaintiff of interest at the rate of 10 percent per annum on the unpaid balance owing her. While 10 percent may be a reasonable rate in many contexts, there was not the slightest bit of evidence or indication that it was reasonable under these circumstances. The corporation's income tax returns for recent years, which were introduced in evidence, showed that its taxable income ranged from $3,200 in the lowest year to $32,000 in its highest year. It thus appears that the corporation was realizing a return on the value of its assets much less than 10 percent. The court's order regarding interest is inequitable to the defendant because it requires him to pay a much higher return to the plaintiff on the value of her stock than the defendant is receiving on the use of that stock. After payment of the $100,000 down, the defendant in the following year would be

obligated to pay $36,300 interest on the balance of $363,000. This interest obligation would amount to $3,025 per month. Even the plaintiff does not contend that defendant's monthly income approaches that amount. It can readily be seen that by the time the unpaid balance has been paid in full, the defendant's obligation for interest will have been sizable. The rate of interest should have been made commensurate with the return the defendant will realize on the use of the plaintiff's stock. *Pope v. Pope*, Utah, 589 P.2d 752 (1978), cited in the majority opinion, involved only the payment of $25,000, together with interest at 10 percent per annum on the unpaid balance, by the husband to the wife to equalize the property division. The husband was awarded the income-producing assets of the parties, and presumably those assets were providing a 10 percent return. The situation in the instant case of an award of $463,000 to the plaintiff for her interest in a corporation owning low-yielding rural grazing and agricultural land is entirely different.

STEWART, J., concurs in the concurring and dissenting opinion of HOWE, J.

ZIMMERMAN, J., does not participate herein.