**F. Grant COOK, Plaintiff and Appellant,**

v.

**Carol L. COOK, Defendant and Respondent.**

No. 860056–CA.

Court of Appeals of Utah.

July 15, 1987.

---

Before GARFF, GREENWOOD and BENCH, JJ.

GARFF, Judge:

Plaintiff appeals from an order approving a sale of real and personal property made pursuant to a divorce decree. He seeks reversal of the order and asks that the sale be set aside.

On May 11, 1983, the trial court granted a decree of divorce to the parties and took under advisement the issue of property and asset distribution.

In September 1983, the trial judge entered supplemental findings of fact, conclusions of law and a decree. These documents specified a method for distributing the marital estate. The principal property involved included a trailer park and construction equipment. Plaintiff valued the trailer park at $225,000.00 in contrast to defendant's valuation of $125,000.00. Valuation of the construction equipment was similarly disparate. Consequently, the court found it impractical, if not impossible, to divide or distribute the parties' assets in kind. Therefore, it appointed Gary Bywater, as special master, to sell the trailer park, construction equipment and the remainder of the marital estate. He was to manage the trailer park until the property was sold, and then distribute the proceeds of the sale in the following order: (1) commissions; (2) the parties' obligations; (3) the remainder divided so that seventy percent went to plaintiff and thirty percent to defendant until plaintiff received $35,000.00 more than defendant as compensation for his share of marital property which had previously been awarded to defendant;[1] and (4) any further remainder divided equally between plaintiff and defendant.

On December 6, 1983, plaintiff offered to purchase the trailer court, but the transaction was never completed. He also offered to purchase the construction equipment for $64,200.00, which was accepted by Bywater and defendant.

At a hearing on March 23, 1984, the parties stipulated to a purchase price of $175,000.00 for the trailer park, and to allow plaintiff thirty days following the hearing in which to buy the park. Defendant was to have the following thirty days to purchase the park. Plaintiff failed to submit an offer on the trailer park during his thirty-day option period. Defendant, during her option period, submitted an earnest money offer for $175,000.00 to Bywater, which he accepted.

The court approved this sale to defendant, ex parte, on April 25, 1984. Defendant's offer provided that she would pay the outstanding mortgages of approximately $36,000.00, with the following credits and setoffs on her behalf: $32,120.00 for her share of the equipment proceeds, a $52,000.00 credit for her equity in the park, a special setoff of $5,000.00 for her share of proceeds from plaintiff's sale of a piece of equipment, and a $2,000.00 setoff for tires that plaintiff had removed from a truck that had been previously sold.

On April 30, 1984, plaintiff filed a document in an attempt to avoid his offer to purchase the equipment. On May 18, 1984, defendant's financing on the trailer park was approved by a bank and the sale was

1. Marital property previously awarded to defendant included the parties' trailer home, jointly owned stock, a piano, and a retirement plan. Plaintiff had previously invested his inheritance in the trailer park and construction equipment.

concluded. On May 25, 1984, the court issued an ex parte judicial deed wherein the court conveyed and quit-claimed plaintiff's interest in the property to defendant. On that date, the court also issued a release of plaintiff's previous liens on the property on the grounds that these liens had been dealt with by the court in the supplemental decree and conflicted with the stipulated agreement.

On June 7, 1984, Bywater remitted a check for $44,711.33 to plaintiff's attorney as payment in full on the real and personal property. Plaintiff moved for relief from this transaction and for dismissal of Bywater as special master.

A hearing was held on July 6, 1984, at which plaintiff and Bywater testified and presented arguments. At the close of this hearing, the court approved the conditions of the sale and affirmed its previous action.

The issues presented by the parties focus on (1) whether there was a denial of due process when the court approved, ex parte, the sale of the real and personal property, issued the judicial deed, and released the liens previously filed by the plaintiff; and (2) whether the court's action was contrary to the divorce decree and unsupported by adequate findings, amounting to an abuse of discretion.

### I

The supplemental decree authorized Bywater to sell the "rest, residue and remainder of the property not hereinbefore disposed of," and to dispose of the proceeds.

The court wanted to bring this whole matter to a final conclusion as quickly as possible, and chose Bywater as agent. Bywater had full authority to liquidate the remainder of the marital estate and to dispose of the proceeds. Both parties had notice of the court's intent to liquidate the holdings. No one objected to the method

the court selected to accomplish this purpose.

Following the court's directions, Bywater accomplished the court's objective by accepting plaintiff's offer to purchase the personal property and defendant's offer to purchase the real property. After receiving and accepting these offers, Bywater presented them to the judge for formal approval.

Thereafter, the judge entered an ex parte judicial deed and release of lien on the property so that defendant could obtain financing under the terms of the agreement. Time was of the essence, and prompt action was required to clear title so that the sale could be consummated. Even though the sale was done in an ex parte manner, it was also done within Bywater's authority as special master.

▄▄▄▄ In summary, this was a sale resulting from a judicial proceeding on specifically described property. It was based upon a decree directing the property be sold. The order specified the terms and the method to accomplish the sale. The sale was reported to and confirmed by the court which ordered it.[2] The method of conducting a judicial sale rests largely in the discretion of the court ordering the sale. 50 C.J.S. *Judicial Sales* § 15 (1947). In addition, confirmation of a judicial sale also lies within the sound discretion of the court and it is generally the duty of the court to ratify such a sale where it was fairly made. 50 C.J.S. *Judicial Sales* § 28(d)(4) (1947).

The plaintiff alleges a lack of due process. However,

[d]ue process is not a technical concept that can be reduced to a formula with a fixed content unrelated to time, place, and circumstances. Rather, "the demands of due process rest on the concept

---

**2.** "The distinctive characteristics of a judicial sale are that it must be the result of a judicial proceeding; it must be based upon an order, decree, or judgment directing that the property be sold, ... and it must be made by the court or by its direction upon the terms and in the mode provided by the decree or order.... Other characteristics of judicial sales are that the

court's decree of sale acts upon specifically described property....

Finally, a judicial sale must ordinarily be reported to and confirmed by the court which ordered it. In short, a judicial sale is a judicial act, and in making such a sale, the court stands as the vendor in the transaction." 47 Am.Jur.2d *Judicial Sales*, § 2 (1969).

of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved."
*Nelson v. Jacobsen,* 669 P.2d 1207, 1213 (Utah 1983) (quoting *Rupp v. Grantsville City,* 610 P.2d 338, 341 (Utah 1980)).

■ Plaintiff asked for a hearing on the transaction, which was held on July 6, 1984, after notice to both parties. There was a full discussion on the issues, and both plaintiff and Bywater testified. The judge reviewed the record and gave each party ample opportunity to present their respective positions. This was a meaningful opportunity to be heard in an appropriate forum. We find no denial of due process on the part of the trial court.

## II

■ In adjusting the financial interests of parties to a divorce, the trial court is permitted considerable discretion and its actions are entitled to a presumption of validity. *Hansen v. Hansen,* 736 P.2d 1055, 1056 (Utah Ct.App.1987); *Burnham v. Burnham,* 716 P.2d 781, 782 (Utah 1986); *Argyle v. Argyle,* 688 P.2d 468, 470 (Utah 1984); *Savage v. Savage,* 658 P.2d 1201, 1203 (Utah 1983). Because parties often place widely disparate values on assets to be distributed in a divorce proceeding, determination of the assets' value is a matter for the trial court, which will not be reversed in the absence of a clear abuse of discretion. *Turner v. Turner,* 649 P.2d 6, 8 (Utah 1982).

The trial judge made a conscientious effort to review the record and familiarize himself with all the facts and issues in this complicated case. An examination of the record and the transcript of the final hearing on July 6, 1984, shows that the trial judge relied upon the representations of counsel as to the accuracy of Bywater's final accounting. The judge recognized that the divorce decree provided that plaintiff should receive $35,000.00 more than defendant from the principal after the sale of the property.

It appears from the record that the judge assumed the $35,000.00 was included in the $44,000.00 check being held by Mr. Gardiner, plaintiff's counsel.

Bywater's final accounting as relied upon by the trial judge needs clarification. The two primary questions are (1) the accuracy of the $52,245.17 credit for defendant's equity in the trailer park, and (2) the failure to mention the $35,000.00 additional payment due to plaintiff.

It is unclear from the accounting how Bywater arrived at the $52,245.17 figure. From the record, it appears that it may have been computed in the following manner: The minute entry from the March 23, 1984 hearing indicated that the parties stipulated to a purchase price of $175,000.00 for the real property.[3] After deduction of expenses and credits, a net amount of $105,000.00 was left, giving each party $52,500.00 in equity.

However, an examination of the record suggests that the following accounting may more accurately reflect the transaction: The equity to be divided between the two parties should be the amount remaining after joint obligations are deducted from the purchase price of $175,000.00. The first mortgage was for $13,064.17. The second mortgage was for $22,445.48. Joint judgments, as indicated in the final accounting, amounted to $4,972.69. The real estate commission came to $10,500.00. These deductions leave a net amount of $124,017.66, giving each party $62,008.83 equity. Crediting defendant $62,008.83 for her equity, plus $32,120.00 for her share of the equipment sale, leaves plaintiff with $29,888.83. Deducting plaintiff's share of taxes leaves a balance of $29,697.50 owed by defendant, which defendant, as purchaser of the property, must pay to purchase plaintiff's interest in conformity with the divorce decree entered by Judge Call. At this point, $35,000.00 should be added to the amount which defendant owes to plaintiff, totaling $64,697.50. Deducting the

---

**3.** Figures in this minute entry were not precise amounts, but corresponded closely with the eq-  uity assigned by Mr. Bywater.

amount already remitted by defendant to plaintiff indicates that defendant may still owe plaintiff $19,986.17, if Bywater's accounting was incorrect and this analysis more accurately represents the transaction.

If, however, upon further hearing, Bywater's accounting is found to be correct, $35,000.00 should be added to the amount due plaintiff pursuant to the memorandum decision.

■ We find no abuse of discretion on the part of the trial judge, since his findings and conclusions were based on faulty information supplied by both parties and by Bywater. The judge fully intended to comply with the original divorce decree and thought this had been accomplished from the information supplied him.

We therefore remand this matter for further hearing consistent with this opinion. Each party to bear its own costs on appeal.

GREENWOOD and BENCH, JJ., concur.