Debbie A. LEE, Plaintiff and Appellant,

v.

Dennis V. LEE, Defendant and Respondent.

No. 860143–CA.

Court of Appeals of Utah.

Nov. 10, 1987.

Michael A. Harrison, Frandsen, Keller & Jensen, Price, for appellant.

John E. Schindler, Price, for respondent.

Before BILLINGS, JACKSON, and DAVIDSON, JJ.

## OPINION

BILLINGS, Judge:

The wife appeals from the property distribution and alimony provisions of the decree of divorce. She contends the trial court abused its discretion by not awarding her an equitable share of the marital assets, and in fixing alimony at $1.00 per year. We agree, and, therefore, reverse and remand.

## I.

## FACTS

Debbie Lee ("the wife") and Dennis Lee ("the husband") were married for almost nine years, from December 9, 1976 until July 25, 1985. At the time of the marriage, the wife was employed, primarily performing clerical functions. Shortly after the marriage, the wife quit her job at her husband's request. The wife's premarital property was minimal.

At the time of the marriage, the husband was the General Mine Foreman of Valley Camp Company. Prior to the marriage, the husband and his brother established a garbage collection business, in which the husband made a substantial monetary investment from personal assets. Subsequent to the parties' marriage, the husband and his brother sold the garbage business and established D & D Equipment and Supply ("D & D"), a corporation involved in the coal industry. The husband owned 52 percent of the shares of D & D. The husband's premarital assets consisted of a D8 cat (tractor), a 1973 Buick automobile, a 1972 pickup truck, and an $18,000 certificate of deposit.

During the marriage the parties had two children, purchased a mobile home and other minor assets, and continued the operation of D & D, the primary income-producing asset of the marriage. The husband worked for D & D for the duration of the marriage. The wife performed clerical duties for D & D during the marriage, including paying monthly bills, answering phones, and typing. The wife was not compensated for her services for over three years.[1]

At trial, the valuation of D & D and its distribution as a marital asset were the main issues. A financial statement, dated February 1, 1985, signed by the husband, and submitted by him to Zions First National Bank, was admitted into evidence. This statement listed the total assets of D & D as $521,389, the total liabilities as $65,966, for a net worth of $455,423. The wife also testified that as of the Wednesday before the trial commenced, the balance in D & D's checking account was $57,846. The husband called Marvin Mutz, a bookkeeper who prepared the year-end tax reports of D & D, to testify on the value of the company. A financial statement prepared by Mutz showed the total net worth of D & D as $112,397.34. The husband testified that the real property of the business had a value of $40,000, making the total net worth of D & D assets, according to the husband, $152,397.34.

Mutz also estimated the value of the husband's 52 percent ownership of D & D stock to be $33,528. Mutz's estimation of the value of the husband's 52 percent interest in D & D was based upon the husband's percentage of total authorized shares (100,000), and not upon total issued shares (40,000). If the value of the husband's 52 percent interest in D & D had been based upon issued shares, the value of his stock,

1. In a temporary order, entered July 30, 1984, the trial court, in ruling on temporary alimony, ordered the husband to maintain the wife as an employee of D & D, rather than have the husband pay the wife temporary alimony.

according to his own expert's testimony, would be $83,820.00.[2]

At the time of trial, the wife, had a high school education, and was currently unemployed despite her efforts at seeking employment.

The trial court awarded the wife assets valued at $19,000. The court awarded the 52 percent interest in D & D exclusively to the husband, without assigning any value to the company, together with other assets valued at $3,500. The wife was awarded $1.00 per year in alimony.

Two issues are raised on appeal. First, did the trial court deny the wife her equitable share of marital assets by refusing to place a value on D & D to allow a cash distribution to the wife, or, if it was unable to assign a value, by failing to make an in-kind distribution of the stock to her? Second, did the trial court abuse its discretion in fixing the alimony award at $1.00 per year?

## II.

### STANDARD OF REVIEW

In divorce proceedings, the trial court has considerable discretion in adjusting the financial and property interests of the parties. *Argyle v. Argyle*, 688 P.2d 468, 470 (Utah 1984). The "determination of the value of the assets is a matter for the trial court which will not be reviewed in the absence of a clear abuse of discretion." *Turner v. Turner*, 649 P.2d 6, 8 (Utah 1982) (citations omitted). However, the trial court must make findings on all material issues, and its failure to do so constitutes reversible error unless the facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987). The findings must be sufficiently detailed and consist of enough subsidiary facts to reveal the steps the court took to reach its conclusion on each factual issue presented. *Id.*

## III.

### DISTRIBUTION OF MARITAL ASSETS

The wife contends the trial court erred in refusing to assign a value to the husband's 52 percent in D & D, a marital asset, and in awarding it exclusively to the husband. We agree. The lower court, in its findings, states that "[b]ased on the evidence presented to the court at trial the court refuse[s] to place a value on the parties['] share of the corporation.... [T]he market value of business cannot be determined from the evidence presented."

■ A wife is entitled to a fair and equitable share of the financial benefits accumulated by virtue of the parties' joint efforts during the marriage. *See Savage v. Savage*, 658 P.2d 1201, 1204 (Utah 1983). D & D was established after the parties' marriage, and its value was actualized during the marriage.

■ The wife assisted in the operation of the corporation by assuming clerical duties, including typing, answering the phones, and paying bills. Moreover, the wife also reared the parties' two children and performed domestic duties, allowing the husband to participate full-time in the business. Therefore, she is entitled to a fair and equitable share of D & D. The trial court's award of the 52 percent interest in D & D, the principal asset of the marriage, exclusively to the husband without any findings as to its value constitutes a clear abuse of discretion.

Alternative avenues were available to the trial court to award the wife her equitable share of D & D. First, the trial court could have valued the husband's 52 percent interest in D & D based on the financial statements and testimony submitted by the parties. The court could then have awarded the wife an equitable portion of D & D by way of off-setting property, or a cash distribution payable over a period of time. This alternative was sanctioned by the Utah Supreme Court in *Argyle v. Argyle*, 688 P.2d 468 (Utah 1984). In *Argyle*, the

2. Computed as follows:
 $152,397.34 divided by 40,000 shares = $3.81 per share

The husband has 22000 shares $ $3.81 per share = $83,820.

trial court awarded the wife one-half of the husband's interest in a closely held family ranch. The trial court relied on recent financial statements prepared by the corporation for the Production Credit Administration to determine the value of the corporation. After deducting from that amount the value of a gift the husband received from his mother, the court halved the balance to determine the husband's interest and halved the figure again to reach the wife's marital cash share of the property. This approach was affirmed by the Utah Supreme Court, where it found that the value of stock can be measured by the net worth of the underlying assets. *Id.; see Johnson v. Johnson*, 674 P.2d 539, 544 (Okla.1983) (value of stock could be computed based upon a financial statement).

Both parties introduced financial statements reflecting the total net worth of D & D's assets. The wife submitted a financial statement dated February 1, 1985, prepared for Zions First National Bank. This statement showed the net worth of D & D assets as $455,423. The husband also submitted a financial statement through Marvin Mutz, a bookkeeper who prepared D & D's year-end tax reports. This statement showed the total net worth of D & D as $112,397.34. The husband then testified that the value of the real property of D & D was $40,000, making the total net worth of D & D, according to the husband, $152,-397.34. Further, Marvin Mutz testified that the value of the husband's 52 percent interest in D & D stock was $33,528. In making this estimation, if Mutz had used the number of total issued shares (40,000), rather than total authorized shares (100,-000), to calculate the value per share, the husband's 52 percent interest in D & D would be valued at $83,820.00.

Applying *Argyle*, the trial court could have assigned a value to D & D. The trial court could then have determined 52 percent of the company as representing the

husband's interest, subtracted any premarital contribution by the husband, and halved the remainder to reach the wife's marital cash share of the corporation.

If the trial court, because of the great disparity of testimony, was unable to assign a value to D & D, then the court could have made an in-kind distribution of D & D stock to the wife. This alternative was affirmed by the Utah Supreme Court in *Savage v. Savage*, 658 P.2d 1201 (Utah 1983).[3] The supreme court, while acknowledging that whenever possible continued joint ownership by divorced spouses of closely held corporate stock should be avoided, agreed that the trial court had "virtually no alternative to an in-kind distribution of Savage stock" because of the widely conflicting valuations. *Savage*, 658 P.2d at 1204.

In the case at hand, the trial court decided not to award the wife a percentage of the stock held by the husband because "D & D is controlled by the husband, and the possibility of ever receiving a dividend or establishing a market value for the stock would be extremely remote." While this observation may be true, we find that to award the wife nothing is patently unjust.

Due to the trial court's failure to value D & D stock or to award the wife her equitable share of the stock in D & D, a marital asset, we reverse and remand this case to the district court for further proceedings. On remand, the district court shall award the wife her equitable share of the corporation, whether it be a cash settlement or an in-kind distribution, set forth findings to support its decision, and enter judgment accordingly.

## IV.

## ALIMONY

The wife's second objection to the decree of divorce is that the trial court abused its discretion in determining the amount of

---

**3.** As Justice Stewart states in his opposition to an in-kind distribution of stock in divorce actions: "a better approach than the distribution in kind ... would be to remand [the] case for a determination by the trial judge of the actual value of the corporation[.]" He believes "[t]hat task is no different, or more difficult, than the same task which must be performed in most tort cases, contract cases, and property cases where an award of damages is made." *Savage v. Savage*, 658 P.2d 1201, 1206 (Stewart, J. dissenting).

alimony by failing to adequately consider the factors set forth in *Jones v. Jones*, 700 P.2d 1072, 1079 (Utah 1985). We agree.

 The purpose of alimony is to "provide support for the wife as nearly as possible at the standard of living she enjoyed during marriage, and to prevent the wife from becoming a public charge." *English v. English*, 565 P.2d 409, 411 (Utah 1977). In fixing alimony awards, three factors must be considered: (1) the financial conditions and needs of the spouse; (2) the ability of the spouse to produce sufficient income for herself; and (3) the ability of the paying spouse to provide support. *Jones v. Jones*, 700 P.2d 1072, 1079 (Utah 1985) (citations omitted). After a careful review of the record, we find no support or explanation for the $1.00 per year alimony award.

The wife is currently unemployed. She was fired from her job at D & D. She has not found employment despite her persistent efforts. The wife was awarded no income-producing assets or cash. She now must incur the expense of moving the mobile home currently situated on the husband's mother's property, in addition to incurring her ordinary living expenses.

The wife was married at the age of 20 with a high school education and clerical skills. She terminated her former employment at her husband's request. During the marriage, the wife devoted her time to raising the couple's two children and working for D & D.

At trial the husband testified that he had made $1,800 per month for the four years preceding the divorce. Moreover, the husband was awarded D & D, an income-producing asset. However, the record indicates that the income generated by D & D had been declining, given the depressed conditions of the coal market.

The trial court made *no findings of fact* to support its award of $1.00 per year alimony as required by *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987). Therefore, we reverse and remand for the trial court to fix the alimony award in light of the three factors articulated in *Jones*, in addition to distributing to the wife her equitable share of the marital assets.

Reversed and remanded. Costs awarded to appellant.

JACKSON and DAVIDSON, JJ., concur.