IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 79819-7-I |
| PHILIPPE CHAINIER, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| KELLIE ANN CHAINIER, | |
| Respondent. | |

SMITH, J. — Philippe Chainier appeals multiple orders entered in the dissolution trial of his marriage to Kellie Ann Chainier. With respect to the parties' property, we hold first that the court's valuation of Philippe's[1] separate property was not supported by substantial evidence. Second, we hold that the characterization of Philippe's contribution to the down payment on the family home as community property was supported by substantial evidence. Third, because the equitability of the court's property division turns on the value of Philippe's separate property, we direct the court to reconsider the division of property on remand.

With respect to child support, substantial evidence supports the court's valuation of Kellie Ann's income from stock dividends. However, the court erred in excluding Kellie Ann's Restricted Stock Units (RSUs) as income, and the

___

[1] Because the parties share a last name, we refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

court's determination of Philippe's income is not supported by substantial evidence because it depends on an erroneous citation of the record. Moreover, the court improperly exceeded the standard support obligation without justifying the increase with specific findings, as required by In re Marriage of McCausland, 159 Wn.2d 607, 620, 152 P.3d 1013 (2007). Therefore, on remand the court must calculate the parties' child support obligations and consider whether a deviation from the standard calculation is warranted and supported by the evidence.

With respect to the parenting plan, we hold that the court-imposed limitations on Philippe's access to his children were not "reasonably calculated to protect" the children from harm. See RCW 26.09.191(2)(m)(i). Specifically, the court's requirements that Philippe abstain from drugs and alcohol and complete a step parenting class were not supported by relevant findings and should be stricken on remand. Furthermore, the court's requirement of multiple Washington-based domestic violence (DV) treatment programs went beyond any witness's recommendations, were prohibitive barriers to Philippe's ability to spend time with his children, and were not supported by specific findings. On remand, the court should impose limitations that adequately address the court's concerns for the children's safety and address the issue of Philippe's access to the ordered services.

Finally, because Philippe's actions before and during trial did not rise to the level of intransigence, the court erred by awarding fees to Kellie Ann. We

decline to award attorney fees to either party on appeal or assign the case to a different judge on remand.[2]

FACTS

Philippe and Kellie Ann were married for 11 years before they separated in June 2017. They have two children, who were 1 and 4 at the time of separation. Before their separation, the family lived in a home on Mercer Island that Philippe and Kellie Ann purchased together.

Both parties had considerable income and assets from their work and family businesses. Kellie Ann was the director of the government security program at Microsoft and owned a 20 percent interest in her family's real estate business, Allen G. Cox Family LLC. In addition to her Microsoft salary, she received RSUs from Microsoft and both monthly and annual distributions from Cox Family.

Philippe was the commercial director for his family's wine business, SAS Pierre Chainier, which required regular travel. He also owned shares in the family's French holding company, SARL Financiere Chainier. SARL Financiere Chainier owns SAS Pierre Chainier, which in turn has ownership interests in multiple other companies in the wine industry. Philippe's direct ownership interest in SARL Financiere Chainier is a 7.5 percent direct share, but he also inherited a 25.89 percent share in remainder interest, which he cannot benefit

---

[2] Philippe also assigns error to several of the court's findings and conclusions but does not support these assignments of error with argument, citations to the record, or citations to authority. Accordingly, we do not address these assignments of error. Billings v. Town of Steilacoom, 2 Wn. App. 2d 1, 21, 408 P.3d 1123 (2017).

from until his father's death.

In July 2017, Philippe filed for divorce. The parties conducted extensive discovery and began trial in November 2018. Trial lasted 16 days spread over 2 1/2 months. The court found that Philippe had committed domestic violence (DV) against Kellie Ann, and accordingly placed limitations on his residential time with the children, subject to the completion of various DV treatment programs. The court also ordered significant child support, deviating upward from the standard calculation due to the parties' income and standard of living. In dividing the parents' assets, the court found that Philippe's expert drastically understated the value of his assets. The court calculated its own value of SARL Financiere Chainier's vineyards and added this value to the expert's valuation of the company, which included the vineyards. Finally, because the court found that Philippe had been intransigent during trial and discovery, it awarded attorney fees to Kellie Ann. Philippe appeals the court's division of property, parenting plan, and child support order.

ANALYSIS

Standard of Review

Court orders resulting from a dissolution involve mixed issues of law and fact. Valuation of property is a question of fact, and we will not disturb the findings if supported by substantial evidence. See In re Marriage of Hall, 103 Wn.2d 236, 246, 692 P.2d 175 (1984) (valuing goodwill). Substantial evidence is evidence "which is sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546

(2012). By contrast, the trial court's characterization of property as either community or separate property is a question of law which we review de novo. In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). Finally, the court's distribution of property is reviewed for abuse of discretion. Soltero v. Wimer, 159 Wn.2d 428, 433, 150 P.3d 552 (2007). A court abuses its discretion if it bases its decision on untenable grounds. Soltero, 159 Wn.2d at 433.

We review parenting plans and child support awards for abuse of discretion, except to the extent that they involve interpretation of statutes, which we review de novo. In re Marriage of Condie, 15 Wn. App. 2d 449, 459, 472, 475 P.3d 993 (2020); Anthis v. Copeland, 173 Wn.2d 752, 755, 270 P.3d 574 (2012).

### Valuation, Characterization, and Division of Property

Philippe contends that the trial court incorrectly valued his separate property, mischaracterized his contribution to the down payment for their residence, and failed to equitably divide the parties' property. We hold that substantial evidence supports the court's characterization of the property but does not support its valuation of Philippe's separate property. Accordingly, on remand, the court will determine the value of Philippe's property based on the evidence presented at trial and divide the property equitably in light of the value determined.

1. Valuation of Property

First, Philippe contends that the court miscalculated the value of his shares in his family's company, including those he inherited from his mother. We agree. "Valuation of the shares of a closely held corporation presents a difficult

problem, calling for the careful weighing of relevant facts and the ultimate exercise of reasoned judgment."[3] In re Marriage of Berg, 47 Wn. App. 754, 756-57, 737 P.2d 680 (1987) (footnote omitted). Thus, whatever approach the court takes, it "'must include proof of value by any techniques or methods which are generally considered acceptable in the financial community.'" Eagleview Techs., Inc. v. Pikover, 192 Wn. App. 299, 309, 365 P.3d 1264 (2015) (quoting Weinberger v. UOP, Inc., 457 A.2d 701, 703 (Del. 1983)).

Here, the trial court's valuation of Philippe's interest in SARL Financiere Chainier was not supported by acceptable financial valuation techniques, because the court's findings exhibited misinterpretations of the evidence and inconsistent reasoning.

Philippe's financial expert, Steve Kessler, estimated that the "fair value" of SARL Financiere Chainier was €8,455,422. Kessler explained that fair value represents the value of the interest to the holder, whereas "fair market value" represents the value a willing buyer would pay a willing seller. Kessler calculated the company's fair value by starting with the book values[4] of the company's assets, including its vineyards, and then accounting for depreciation.

However, the court found that Kessler used the book value of the company and did not "adjust[] for the fair market value." The court then found that it was "nonsensical to think that the book value . . . is the fair market value,"

---

[3] "A closely held corporation is one in which the stock is held in a few hands, or in a few families, and wherein it is not at all, or only rarely, dealt in by buying and selling." In re Marriage of Berg, 47 Wn. App. 754, 756 n.2, 737 P.2d 680 (1987).
[4] The book value of an asset is the original price adjusted for depreciation.

6

and that accordingly there was "evidence to support an adverse inference that the fair market value is greater than what Mr. Kessler opined." The court proceeded to use an approach suggested by Kellie Ann's counsel, noting the addition of two hectares[5] of land in a 2017 company report, along with an increase of €42,644 in the value of the company's land for each one. It then multiplied this value per hectare by 250 (representing the approximately 250 hectares of land which SARL Financiere Chainier has an ownership interest in) and got an approximate total of €10.625 million. The court declared that this new value was a "strong impeachment of Mr. Kessler's valuation" and found Kessler not credible. Finally, the court chose to use Kessler's valuation of the business, which included the vineyards, and then add a separate €8,667,282 for the value of the vineyards.[6]

The court's approach does not appear to be well reasoned. First, fair market value is the common way to value marital assets, but when the fair market value of an asset cannot be determined, fair value is an appropriate alternative. 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND

---

[5] A hectare is "a metric unit of area equal to 100 ares or 10,000 square meters." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1048 (2002).

[6] The court seems to have ultimately settled on this value for the vineyards based on its finding that the €10.625 million value was €8.6 million more than "the book value or cost approach used by Mr. Kessler." Specifically, it appears to have adopted Kellie Ann's suggestion to subtract Kessler's estimate of the book value of two companies owned by SAS Pierre Chainier which owned vineyards. This appears logically flawed for several reasons: (1) Kessler's fair value estimate of these companies was substantially more than what he recorded as the "book value," (2) the value of the companies included more assets and liabilities than just the vineyards, and (3) SAS Pierre Chainier only owned a 29 percent interest in one of these companies, but the court's addition of the entire value would suggest it owned a 100 percent interest.

COMMUNITY PROPERTY LAW § 32:6 (2020); see, e.g., In re Marriage of Fleege, 91 Wn.2d 324, 326, 330, 588 P.2d 1136 (1979) (goodwill of a professional practice, although not "readily marketable," should be valued at dissolution in terms of the "value . . . to the professional spouse").  Stocks in a closely held corporation, such as SARL Financiere Chainier, are commonly valued in terms of fair value because they "by definition do[ ] not have a fair market value, since a market wherein a willing buyer will meet a willing seller . . . generally does not exist." Suther v. Suther, 28 Wn. App. 838, 843, 627 P.2d 110 (1981).  The court's focus on fair market value and misapprehension of what valuation method Kessler was using was therefore error.  Further, as Philippe points out, there was no testimony explaining the meaning of the €42,644 figure, and if the court had used a similar difference in a report from a different year, it would have found the value of a hectare to be €14,965, not €42,644.

The court's explanation of why it did not find Kessler credible depended on (1) its mischaracterization of Kessler as presenting the court with only the book value of the company, (2) its assertion that Kessler's estimates were not credible as fair market values, despite the fact that Kessler was estimating fair values, not fair market values, and (3) its identification that the court's estimate, which we have noted was mathematically inconsistent, was significantly higher than Kessler's estimate.  Accordingly, the court made a determination of the value of the vineyards without using "'techniques or methods which are generally considered acceptable in the financial community'" and then compounded this problem by adding the value of the vineyards to a valuation of the business that

already included the vineyards.  Eagleview, 192 Wn. App. at 309 (quoting Weinberger, 457 A.2d at 713).  Because its valuation is not financially sound, the court must make a proper determination of SARL Financiere Chainier's value on remand.

Kellie Ann contends that the court did not need to use accepted methods of valuation because it was using an adverse inference against Philippe.  This too is problematic.  The court found that Philippe's testimony regarding the value of the company was "evasive and not credible" and that Philippe did not offer appraisals of the vineyards or provide Kellie Ann with the information that would enable her to obtain appraisals.  Kellie Ann contends that Philippe's resistance to discovery left the court no choice but to draw an adverse inference. CR 37(b)(2)(A) permits a court to assume facts to be established *after* a "party fails to obey an order to provide or permit discovery."  Here, Kellie Ann did not file a motion to compel, nor did the court grant one.  Furthermore, when punishing a discovery violation, "the court should impose the least severe sanction that will be adequate to serve the purpose of the particular sanction."  Burnet v. Spokane Ambulance, 131 Wn.2d 484, 495-96, 933 P.2d 1036 (1997).  Neither Kellie Ann nor the court provided any authority that establishes that such a sweeping adverse inference is appropriate in these circumstances.  Therefore, the court erred in its valuation of Philippe's family business.

Next, the court erred in its calculation of the value of Philippe's stocks in this company.  As noted, many of Philippe's stocks were remainder interests, meaning that Philippe's use is limited until his father dies.  For future interests

such as these, the court in a dissolution proceeding should determine their present value. See In re Marriage of Wright, 147 Wn.2d 184, 196, 52 P.3d 512 (2002) (determining present value of a pension). Experts at trial testified to different possible formulas for determining present value, which included applying a 6 percent discount over 10 years or multiplying the future value by 79 percent. However, the court chose to discount these remainder interests to 73.1 percent of their future value. This number was not offered in evidence but, instead, seems to have come from Kellie Ann misciting her expert. Kellie Ann contends that this value is acceptable because it is still within the range of values testified to by different experts. Although this is true, the court's calculation is nonetheless not supported by the evidence where it is based on an erroneous citation to the evidence. See, e.g., City of Vancouver v. Pub. Emp't Relations Comm'n, 180 Wn. App. 333, 364, 325 P.3d 213 (2014) (court's finding that employer asserted something that employer's witnesses had in fact denied was not supported by substantial evidence). Thus, the court must properly determine the value of Philippe's stocks on remand.

The court's errors also extend to its valuation of Philippe's inheritance from his mother. The inheritance includes shares in the family company, and the court applied its same reasoning regarding the value of the company and Philippe's shares to its valuation of his inheritance. It also made other findings that were not supported by the record, including that Phillipe provided no appraisals of his family's residential properties. Therefore, on remand, the court must also determine the appropriate value of Philippe's inheritance based on the

evidence presented at trial.

2. Characterization of Contribution to Family Home

Next, Philippe contends that the court mischaracterized his contribution to the down payment for the family home as community property. The court found that Philippe had received a gift of €68,602 from his grandmother, which was his separate property, but that Philippe had given this money to the marital community to pay for the house. Because the trial court's finding is supported by the evidence, we disagree with Philippe.

If a party establishes that property is separate, there is a presumption that it will "remain[] separate property in the absence of sufficient evidence to show an intent to transmute the property from separate to community property." In re Estate of Borghi, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). While a spouse can choose to gift separate property to the community, the mere fact that the title to property changes from the name of a single spouse to both spouses is insufficient to rebut this presumption. Borghi, 167 Wn.2d at 486. Here, the court found that Philippe's "gift letter" "gifting $84,400 to 'Kellie Ann & Philippe Chainier'" to be applied to the purchase of the home was "sufficient evidence to show [Philippe's] intent to convert the $84,400 gift from separate to community property." The letter labels Philippe the "Donor" and says he has "made a gift of $84,400" to "Kellie Ann [and] Philippe Chainier." This is sufficient evidence to overcome the presumption and establish that the $84,400 was gifted to the marital community.

Philippe disagrees, contending that this language was for the benefit of

the lender and does not evidence donative intent. The cases he cites to this effect do not support the proposition that a letter written for financial purposes cannot be evidence of an intent to give money to the marital community. See Borghi, 167 Wn.2d at 491 n.7 (explaining that the use of separate real estate to secure a mortgage is immaterial to the characterization of the real estate but may, for instance, create a community right of reimbursement on the mortgage); Onewest Bank, FSB v. Erickson, 184 Wn. App. 462, 469, 337 P.3d 1101 (2014) (discussing but not characterizing a "gift letter"), rev'd, 185 Wn.2d 43, 367 P.3d 1063 (2016). Because the letter was sufficient evidence to rebut the presumption, we are not persuaded by Philippe's contention.

### 3. Division of Property

Finally, the court must reconsider an equitable division of property on remand. The court must consider the "economic circumstances of each spouse" in its division of property, and in this case, it determined that the property division was fair and equitable due in part to Philippe's "extensive separate property." RCW 26.09.080. Because the value of Philippe's property and his economic circumstances must be determined on remand, the division of property must be determined as well. See In re Marriage of Kile, 186 Wn. App. 864, 885, 347 P.3d 894 (2015) ("It is not clear in this case that the court would have divided the property the same way had the assets been properly characterized. Under these circumstances, remand is required to enable the trial court to make a just and equitable division of the property considering its correct characterization.").

Child Support

Philippe contends that the court erred in valuing the parties' income and in deviating from the standard calculation of the support obligation. We agree.

"The child support statutes are expressly intended to divide the child support obligation between parents in proportion to their income." Condie, 15 Wn. App. 2d at 456. When determining income for purposes of child support, the court must consider all sources of income[7] except those excluded in RCW 26.19.071(4). "A trial court's failure to include all sources of income not excluded by statute is reversible error." In re Marriage of Bucklin, 70 Wn. App. 837, 840, 855 P.2d 1197 (1993). The statutes' "expansive view" of income includes "'(1) a gain or recurrent benefit that is usually measured in money' or (2) the 'value of goods and services received.'" Condie, 15 Wn. App. 2d at 455 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (2002)). After determining income, the court looks to the child support schedule in RCW 26.19.020 and allocates support obligations between the parents proportionate to their net income. RCW 26.19.080(1). The court may make additional provisions for health care costs, day care, or "special child rearing expenses," or may deviate from the standard calculation for the enumerated reasons listed in RCW 26.19.075(1). RCW 26.19.080(2)-(3). In making such a deviation, the court must include written findings of fact that consider the parents' standard of living and the children's special medical, educational, or financial needs. RCW 26.19.020; McCausland, 159 Wn.2d at 620. It is not enough that

---

[7] RCW 26.19.071(1) and (3).

"cursory findings of fact and the trial record might appear to justify awarding a child support amount that exceeds the economic table," but rather the court must enter sufficiently detailed findings to establish that the court properly exercised its discretion. McCausland, 159 Wn.2d at 620.

Philippe first contends that the trial court incorrectly calculated his income. The court found that Kessler testified that Philippe's monthly gross income was $14,421.42, and it then relied on this number to calculate Philippe's net income. This was incorrect. Kessler testified that Philippe's gross income was $11,000.00. The number used by the court was a different amount cited by Philippe, which included costs paid directly to the French government. Because the court erroneously cited the record in determining Philippe's income, Philippe's income must be properly determined on remand.

Next, Philippe contends that the trial court incorrectly calculated Kellie Ann's income. He claims that the court undervalued Kellie's distributions from her family business and erred by excluding Kellie Ann's RSUs from her income.

With respect to the distributions, the court found that Kellie Ann would receive $2,000 per month. While there was some evidence in the record that Kellie Ann received more in distributions, Kellie Ann's brother testified that each of the owners received $1,000 per month, as well as an additional distribution of $10,000 to $15,000 annually. He testified that he expected the annual distribution for the next few years would be "around 15 or plus thousand dollars." The court's calculation of Kellie Ann's distributions assumes an annual distribution of $12,000, which, while lower than this last estimate, is within the

range described by Kellie Ann's brother. Accordingly, the court's calculation is supported by substantial evidence. See In re Marriage of Rockwell, 141 Wn. App. 235, 248, 170 P.3d 572 (2007) ("If a trial court's finding is within the range of the credible evidence, we defer.").

However, the court erred by excluding Kellie Ann's RSUs from her income. The court reasoned it did not need to include RSUs as income because the "vast bulk of the RSUs that are vesting over the next two years are being distributed as property." However, all of a party's income that is not specifically excluded by statute must be included in child support calculations. In re Bucklin, 70 Wn. App. at 840. When RSUs vest, the holder gets a gain, the value of which is taxed as ordinary income. Anat Alon-Beck, Unicorn Stock Options—Golden Goose or Trojan Horse?, 2019 Colum. Bus. L. Rev. 107, 170 n.287 (2019). Thus, RSUs are income, and because they are not excluded by the statute, they must be included in child support calculations. RCW 26.19.071(4).

Kellie Ann contends that including RSUs for purposes of child support would be erroneous when they were also distributed as property. We rejected a similar argument in Condie, where we determined that counting unvested stocks as a spouse's separate property to be distributed to him and also as that spouse's income for determining child support obligations was not "repeatedly distribut[ing]" the same property. 15 Wn. App. 2d at 469. Instead, we held that a court "properly considered [a spouse's] unvested stocks when analyzing the overall fairness of the property distribution and when determining [the spouse's] ability to pay . . . child support." Condie, 15 Wn. App. 2d at 469. As in Condie,

15

the court here counted Kellie Ann's RSUs as her separate property to be distributed to her, but unlike Condie, the court failed to consider the RSUs for purposes of child support as well as property distribution. See Condie, 15 Wn. App. 2d at 469. Thus, the court erred by excluding Kellie Ann's RSUs from her income, and on remand, the court must calculate child support including this value.

Finally, Philippe contends that the court erred in deviating from the standard calculation. We agree. After determining the parties' income, the court concluded that the standard calculation established by the economic table required monthly payments of $906.06. The court then took note of the children's standard of living, demonstrated by their large home, history of traveling, private school attendance, and the fact that they had an au pair. It thus concluded that their standard of living justified exceeding the standard calculation to a monthly payment of $1,500.00. However, the court's general findings did not link the increase in support to specific expenses. Furthermore, the court then made additional provisions for the payment of educational expenses and day care, which suggest that the court's departure from the standard calculation did not correlate to its discussion of the children's private school attendance. Therefore, the court's order falls short of the requirement that "the amount of child support . . . be based on the correlation to the . . . children's needs." McCausland, 159 Wn.2d at 620 n.6.

The court also erred by ordering that the additional expenses, including educational expenses, medical expenses, and airfare for visitation, should be

split 50-50 between the parties. This was error because these child rearing expenses should be "shared by the parents in the same proportion as the basic child support obligation"—that is, proportionate to their income. RCW 26.19.080(2)-(3).

We reverse and remand for a proper determination of Kellie Ann's income to include her RSUs and of Philippe's income based on a reasoned valuation given the evidence submitted. After recalculating the parties' income, the court must determine the child support obligations of the parties, including whether a deviation from the standard calculation is appropriate, based on the evidence presented and supported by specific findings. Finally, the court must divide the additional special expenses between the parents proportionate to their income.

<u>Parenting Plan</u>

Philippe challenges the parenting plan's limitations on his residential time. Specifically, he contends that the conditions for him to progress from the parenting plan's phase I to phase II are excessively restrictive. He specifically challenges the court's requirements that he (1) participate in a step parenting class, (2) abstain from drugs and alcohol, and (3) complete both a Washington domestic violence intervention program and the "DV Dads" program. We agree that these requirements are overly restrictive because they are not supported by the court's findings.

"[T]he best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent" necessitated by the divorce or required to protect the child. RCW 26.09.002.

However, if the court finds a parent has a history of domestic violence, the court must place limitations on the parent's residential time. RCW 26.09.191(2)(a). These limitations must be "reasonably calculated to protect the child from . . . harm that could result if the child has contact with the parent." RCW 26.09.191(2)(m)(i). The limitations may include a requirement to complete "relevant counseling or treatment." RCW 26.09.191(2)(m)(i). However, if the court "expressly finds that the parent's conduct did not have an impact on the child" or that, because contact between the parent and child will not harm the child and the harmful conduct is unlikely to recur, applying limitations would not be in the child's best interests, then the court need not apply limitations. RCW 26.09.191(2)(n).

Here, the court found, and Philippe does not contest, that Philippe had a history of domestic violence against Kellie Ann. Accordingly, the court limited Philippe's residential time with the children under RCW 26.09.191. Under phase I of the court's plan, Philippe was permitted at most one overnight every two weeks, along with limited afternoon visits. To progress to phase II, the plan required Philippe to complete nine months of weekly group sessions in a DV intervention program and then complete the DV Dads program. During this time, Philippe was required to comply with the contract for the DV intervention program and to abstain from mood and mind altering drugs, including alcohol and cannabis. The plan also required Philippe to complete 12 sessions of parent coaching, to take a step parenting class, and to "abstain from any corporal punishment of the children, including pulling a child by the ear."

As an initial matter, the requirement that Philippe take a step parenting class is not reasonably calculated to protect the children from harm. There was no evidence during trial discussing the need for a step parenting class or describing what it would entail. Because it is unclear what the court meant by this order and there are no findings to support the requirement, this limitation is not supported by substantial evidence.

The sobriety requirement is also not reasonably calculated to protect the children based on the court's findings. Philippe's DV intervention program required Philippe to abstain from drugs and alcohol, and Philippe does not contend that it was inappropriate for the court to order him to comply with the rules of the program. However, the court's additional and separate requirement that Philippe abstain from alcohol was not supported by any of its findings.[8] Specifically, while there was some evidence in the record regarding alcohol use, the court did not enter any findings about Philippe's drinking or its effect on the children. We therefore conclude that the court's sobriety provision was not reasonably calculated to protect the children and should be stricken on remand. See In re Marriage of Underwood, 181 Wn. App. 608, 612-13, 326 P.3d 793 (2014) (holding in a related context that, given parent's liberty interest in the care of their children and the legislature's general policy of encouraging loving and stable relationships between parents and children, the court must enter detailed findings supporting its decision before potentially eliminating a parent's

---

[8] We note this requirement could have ramifications if, for instance, the program changed its rules.

19

residential time with children).

We next conclude that, given the court's lack of findings, the court's DV intervention program and DV Dads program requirements exceed the court's discretion. The parenting evaluator initially recommended that Philippe move to phase II after completing 9 months of the DV intervention program and did not recommend the DV Dads program. Later, the parenting evaluator provided an updated recommendation that, in case Philippe moved to France, he should complete 6 months of the intervention program before expanding his residential time from two to four overnights per month and then complete the DV Dads program before expanding residential time to eight overnights per month. A different expert parenting evaluator testified that these recommendations were excessive because Philippe's therapist reported that Philippe was making significant progress and was not a batterer. Furthermore, Philippe had to travel regularly for his job, and this requirement was exacerbated when his mother died and Philippe had to take on more clients in Europe. This was a significant barrier on Philippe's ability to comply with the court's requirements, especially the weekly intervention program which permits two absences in 90 days.

Given these facts, the trial court imposed a heavy burden on Philippe's ability to spend time with his children without including any supporting findings. The trial court did not enter findings regarding why it exceeded the most onerous conditions recommended by any expert in this case, whether it considered other treatment options presented at trial that would allow Philippe more flexibility to address these issues while complying with the requirements of his job, or how

20

the restrictions serve the best interests of the children. The court did not include any findings regarding why these particular restrictions are appropriate and necessary to protect the children and did not appear to consider whether or how Philippe could navigate them given his work schedule. Therefore, we hold that the court abused its discretion in imposing these restrictions and the appropriate restrictions must be determined on remand in light of the evidence presented. See In re Parentage of A.F.M.B., 1 Wn. App. 2d 882, 888-89, 407 P.3d 1161 (2017) (without findings explaining the court's reasoning, record did "not establish that the trial court made a tenable decision . . . especially in the absence of any meaningful discussion" of father's DV in the context of a parenting plan provision).

<u>Assignment to a Different Judge</u>

Philippe requests that we order this case to be assigned to a different judge on remand. We decline to do so.

A party may seek reassignment where "the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014) (footnotes omitted).

Philippe cites In re Marriage of Black, 188 Wn.2d 114, 137, 392 P.3d 1041 (2017), in which the court explained that because evidence suggested that the judge was biased against a party's sexual orientation, the case should be reassigned on remand. Our Supreme Court also has instructed a court to

reassign a case "for the sole purpose of avoiding any appearance of unfairness or bias." In re Marriage of Muhammad, 153 Wn.2d 795, 807, 108 P.3d 779 (2005).

Here, although Philippe contends that the judge appeared to be biased against the French, the court's findings and conclusions, even where erroneous, do not appear to be based on judicial impropriety. The record, the court's findings, and the orders entered do not support a determination that the court was biased. Philippe provides no persuasive basis to determine otherwise. Thus, we decline to reassign the case on remand.

### Attorney Fees

As a final matter, Philippe appeals the court's award of attorney fees below, and both parties request attorney fees on appeal. We reverse the award of attorney fees below and decline to grant attorney fees on appeal.

An award of attorney fees in a dissolution proceeding is within the trial court's discretion. In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). The court must generally balance the needs of the party requesting the fees against the opposing party's ability to pay. Mattson, 95 Wn. App. at 604. However, if a party has been intransigent, the financial need of the party seeking the award is not relevant. Mattson, 95 Wn. App. at 604.

Here, the court entered several findings supporting its conclusion that Philippe was intransigent, mainly related to Philippe's failure to produce evidence regarding the assets owned by SARL Financiere Chainier. These findings alternately do not indicate intransigent behavior or are not supported by the

22

record.  Kellie Ann and Philippe each requested similar information regarding the other's interest in real property, and neither provided information regarding real property owned by their family companies in response to these questions.  The court's finding that Philippe's "production did not mirror" Kellie Ann's is not supported by the record.  Kellie Ann did not request information regarding these assets until August 6, 2018, six months after her first discovery requests.  Philippe noted that it would take time to obtain this information because most French businesses are closed in the month of August, but provided these responsive documents by September 12, 2018.  Accordingly, the record indicates that, contrary to the court's findings, Philippe provided information necessary to value his property interests in France after he was asked to do so.  As noted, Kellie Ann never filed a motion to compel discovery, nor did the court grant one.

The court's other findings supporting intransigence refer to the extensiveness of discovery or the litigiousness of trial.  For instance, the court noted that Philippe objected to evidence offered by Kellie Ann and offered no photographs of his property.  The court did not explain why these strategic choices would constitute intransigence.  The court also found that Philippe "undervalued his property interests by at least three to four times," but this finding depends on the court's own unsupported valuation.  Overall, the court's finding of intransigence was not supported by the record.  Because intransigence was the basis for the court's order of fees, we conclude that the trial court based its

decision on untenable grounds and reverse the award.[9]

Both parties request attorney fees on appeal under RCW 26.09.140, which provides that an appellate court "may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees."[10] Given the extensive assets of both parties and our determination that Philippe was not intransigent, we decline to award attorney fees.

We reverse and remand with instructions to determine the proper

---

[9] Philippe presented additional evidence in his reply brief to support a finding that Kellie Ann had access to financial information about his business. Kellie Ann moved to strike this evidence. A party may provide additional evidence on appeal if, among other requirements, it is needed to fairly resolve the issues on appeal. RAP 9.11(a). Here, the evidence provided by Philippe would not change the outcome and is not needed to resolve the issues on appeal. Accordingly, we grant Kellie Ann's motion.

[10] RAP 18.1(c) requires parties to file financial affidavits at least 10 days prior to the day the case is set, and to file answers to these affidavits within 7 days after service of the affidavit. Philippe filed a declaration of financial need on January 5, 2021. Kellie Ann subsequently filed a declaration describing her financial circumstances and challenging Philippe's declaration on January 12, after the deadline for filing a financial affidavit but within the deadline for filing an answer. Philippe correctly noted that this answer was effectively an untimely financial declaration and requested permission to file an answer. His January 19 answer then answered Kellie Ann's financial declaration with a 31-page appendix of new evidence regarding Kellie Ann's finances. Kellie Ann subsequently filed an "Objection and Motion to Strike Additional Evidence Offered in Answer" on January 26, objecting to much of Philippe's new evidence as hearsay. Philippe filed a "Response to Respondent's Objection and Motion to Strike" on February 2.

Given our authority under RAP 18.8(a), we grant Philippe's request and consider his answering declaration only to the extent it answers Kellie Ann's financial declaration. Although Kellie Ann claims she did not need to file a financial affidavit because she is requesting fees on the basis of Philippe's intransigence, her financial information was still important for determining her ability to pay Philippe's fees. She chose to file this information, and Philippe had the right to answer it. We grant Kellie Ann's motion to strike the evidence in Philippe's answer that is impermissible hearsay. Ultimately, these protracted motions do not change our decision with regard to attorney fees.

valuation of Philippe's separate property, to determine a just and equitable distribution of the property, to recalculate child support based on the parties' actual income, which includes Kellie Ann's RSUs and a calculation of Philippe's income based on the evidence, and to determine the appropriate limitations on Philippe's residential time based on the evidence presented at trial.

WE CONCUR: